**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| HEATHER COYLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | **Complaint for Declaratory Judgment,** |
| | ) | **Monetary Damages, and Other Relief** |
| GREENVILLE COUNTY SCHOOL | ) | |
| DISTRICT; MORGAN CLEMENTS; | ) | |
| KAITLYN NOLLER; R. DOUGLAS | ) | |
| WEBB; and JOHN & JANE DOES 1-10; | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, Heather Coyle, complaining of the Defendants herein, would respectfully show and allege unto this Honorable Court as follows:

### PART I: PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Heather Coyle is a citizen and resident of the County of Greenville, State of South Carolina.  From August 1998 to May 2023, Mrs. Coyle was employed by Defendant Greenville County School District ("the District") as an elementary-school teacher.  She was employed on a continuing-contract basis until her employment was illegally terminated.

2.     Defendant District is an agency, political subdivision, and/or governmental entity organized under and existing pursuant to the laws of the State of South Carolina, that operates public schools in Greenville County, South Carolina, and has a principal place of business in the City of Greenville, South Carolina.  At all times relevant to this lawsuit, the District acted by and through its agents, servants, and/or employees, who carried out its official policies, practices, and/or customs in reference to Mrs. Coyle, in violation of both federal and state law, thereby making the District jointly and severally liable for the damages inflicted upon her.

1

3.     Upon information and belief, Defendant Morgan Clements is a citizen and resident of the State of South Carolina who, at all times relevant hereto, was and remains employed by the District as its Chief Human Resources Officer.  The acts and/or omissions complained of herein that relate to Ms. Clements were performed by her personally, or at her direction, or in combination with those of other Defendants named herein and/or others, in violation of both federal and state law, thereby making her jointly and severally liable for the damages inflicted upon Mrs. Coyle. Ms. Clements is being sued in both her official and individual capacities.

4.     According to Defendant Clements, she is "responsible for . . . ensuring that the appropriate Human Resources systems are in place for . . . evaluation, leave management, . . . staffing, . . . and employee relations," among other things.

5.     Upon information and belief, Defendant Kaitlyn Noller is a citizen and resident of the State of South Carolina who, at all times relevant hereto, was and remains employed by the District as its Leave Administrator.  The acts and/or omissions complained of herein that relate to Ms. Noller were performed by her personally, or at her direction, or in combination with those of other Defendants named herein and/or others, in violation of both federal and state law, thereby making her jointly and severally liable for the damages inflicted upon Mrs. Coyle.  Ms. Noller is being sued in both her official and individual capacities

6.     According to Defendant Noller, she is "responsible for coordinating and monitoring the usage of medical leave, including Family and Medical Leave, for over 12,000 employees in the District," and her responsibilities "include providing leave of absence paperwork to employees who are requesting a leave of absence and managing leave files for the duration of the leave."

7.     Upon information and belief, Defendant Clements was and remains Defendant Noller's supervisor.  According to Ms. Noller, she "assisted Heather Coyle in the same manner as

other employees while she was on medical leave, and consulted with [Ms. Clements] regarding any substantive decision related to Ms. Coyle's [medical] leave or continued employment."

8.    Upon information and belief, Defendant R. Douglas Webb is a citizen and resident of the State of South Carolina who, at all times relevant hereto, was and remains employed by the District as its General Counsel.  The acts and/or omissions complained of herein that relate to Defendant Webb were performed by him personally, or at his direction, or in combination with those of other Defendants named herein and/or others, in violation of both federal and state law, thereby making him jointly and severally liable for the damages inflicted upon Mrs. Coyle.  Mr. Webb is being sued in both his official and individual capacities.

9.    "As General Counsel for the District," Defendant Webb is "responsible for reviewing and drafting [Board of Trustees] policies; responding to legal complaints; reviewing contracts, leases, and other legal documents; handling litigation through direct representation or coordination of retained counsel; representing the District in hearings; and providing legal advice and training, including on topics such as the South Carolina Freedom of Information Act."  Among other tasks, Mr. Webb "regularly assist[s] the Communications Department in responding to requests submitted pursuant to the South Carolina Freedom of Information Act (FOIA)."

10.    Defendants John and Jane Does 1-10 are as-yet unidentified employees, agents, and/or others, who acted on behalf of the District and/or in combination with other Defendants named herein and/or others, in violation of both federal and state law, thereby making them jointly and severally liable for the damages inflicted upon Mrs. Coyle.  They are being sued in both their official and individual capacities.

11.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (general federal-question jurisdiction) and 28 U.S.C. § 1343 (civil-rights actions) because several of Mrs.

Coyle's claims made herein arise under federal statute—42 U.S.C. § 1983 *et seq.*—as well as various clauses of the U.S. Constitution. This Court also has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.* Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Mrs. Coyle's state-law constitutional, contractual, and tort claims made herein.

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because all or some of the Defendants reside, or have a principal place of business, in this judicial district. In addition, venue is proper in the Greenville Division under 28 U.S.C. § 1391 and Local Rule 3.01 because, in this division, a substantial part of the acts or omissions giving rise to Mrs. Coyle's claims made herein occurred, and Defendant District does business relating to the acts or omissions alleged.

## PART II: THE ILLEGAL TERMINATION

13.     For more than two decades, Mrs. Coyle was employed by the District as an elementary-school teacher under a "continuing contract" as that term is used in S.C. CODE § 59-26-40. "A continuing contract teacher shall have full procedural rights that currently exist under law relating to employment and dismissal." *Id.* § 59-26-40(J).

14.     Pursuant to the U.S. Supreme Court's decision in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985), certain governmental employees have a property interest in continued employment that is afforded due-process protection when, according to state law, they can be terminated only upon a finding of good, or just, or sufficient cause. *Id.* at 538-39.

15.     The Due Process Clause of the Fourteenth Amendment "provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Loudermill,* 470 U.S. at 541. "'[T]he root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing *before* he [or she] is deprived of any significant property interest.'" *Id.* at 542 (emphasis in original).

4

16.    Forty years ago, the U.S. Supreme Court explained: "The essential requirements of due process . . . are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.  The tenured public employee is entitled to oral or written notice of the charges against him [or her], an explanation of the employer's evidence, and an opportunity to present his [or her] side of the story." *Loudermill,* 470 U.S. at 546 (citations omitted).

17.    The South Carolina Teacher Employment and Dismissal Act ("the Teacher Act") provides due-process rights for continuing-contract teachers, stated in pertinent part as follows:

> Any teacher may be dismissed at any time who shall fail, or who may be incompetent, to give instruction in accordance with the directions of the superintendent, or who shall otherwise manifest an evident unfitness for teaching; *provided, however, that notice and an opportunity shall be afforded for a hearing prior to any dismissal.*  Evident unfitness for teaching is manifested by conduct such as, but not limited to, the following: persistent neglect of duty, willful violation of rules and regulations of district board of trustees, drunkenness, conviction of a violation of the law of this State or the United States, gross immorality, dishonesty, illegal use, [and/or] sale or possession of drugs or narcotics.

S.C. CODE § 59-25-430 (emphasis added).

18.    In other words, "prior to any dismissal" (S.C. CODE § 59-25-430), a continuing-contract teacher such as Mrs. Coyle must be granted "notice and opportunity for a hearing" if the District desires to dismiss her "for cause during the school year" (*id.* § 59-25-420(b)).

19.    The Teacher Act further specifies, in pertinent part:

> Whenever a superior, principal, where applicable, or supervisor charged with the supervision of a teacher finds it necessary to admonish a teacher for a reason that he believes may lead to, or be cited as a reason for, dismissal . . . *he [or she] shall . . . bring the matter in writing to the attention of the teacher involved and make a reasonable effort to assist the teacher to correct whatever appears to be the cause of potential dismissal . . . and . . . allow reasonable time for improvement.*

S.C. CODE § 59-25-440 (emphasis added).

5

20.     In other words, whenever a continuing-contract teacher such as Mrs. Coyle is facing "potential dismissal," her "superior, principal, . . . or supervisor charged with [her] supervision" must first give her written notice, "make a reasonable effort to assist [her] to correct whatever appears to be the cause of potential dismissal," and then "allow reasonable time for improvement" before her employment may be subject to termination.  S.C. CODE § 59-25-440.

21.     Regarding the statutorily required pretermination notice and opportunity for a hearing, the Teacher Act further specifies, in pertinent part:

> *A teacher may not be dismissed unless written notice specifying the cause of dismissal first is given to the teacher by the superintendent and the teacher is given an opportunity for an evidentiary hearing.*  The superintendent or his [or her] designee may meet with the teacher before issuing a notice of dismissal to discuss alternative resolutions.  The parties attending this meeting must have the option of having a representative present.  *This written notice must include the fact that a hearing before the [District Board of Trustees] or its designee is available to the teacher upon request* if the request is made in writing within fifteen days as provided in Section 59-25-470.  Any such hearing must be public unless the teacher requests in writing that it be private. . . .  If the board holds the evidentiary hearing, the board shall issue its decision within the thirty days after the hearing. This decision must be in writing and must include findings of facts and conclusions of law.  *The board shall determine if the evidence shows good and just cause for the notice of . . . dismissal, and accordingly shall render a decision to affirm or withdraw the notice of . . . dismissal*. . . .  Testimony at a hearing must be taken under oath. . . .  The board, or its designee, shall cause a record of the proceedings to be kept and shall employ a competent reporter to take stenographic or stenotype notes of all testimony.

S.C. CODE § 59-25-460(A), (C)-(E) (emphasis added).  The pre-termination notice and opportunity to be heard described in the Teacher Act is more exacting than that required by *Loudermill.*

22.     In other words, a continuing-contract teacher such as Mrs. Coyle "may not be dismissed unless written notice specifying the cause of dismissal first is given to [her] by the superintendent and [she] is given an opportunity for an evidentiary hearing."  S.C. CODE § 59-25-460(A).  "This written notice *must include the fact that a hearing before the board or its designee is available to the teacher upon request*. . . ."  *Id.* (emphasis added).

6

23.     Furthermore, only the District's Board of Trustees, or its designee, is empowered to "determine if the evidence shows good and just cause for the notice of . . . dismissal. . . ." S.C. CODE § 59-25-460(D).  Lower-level bureaucrats such as Defendants Clements and Noller—acting alone or together—are not legally authorized to make binding for-cause determinations, or terminate continuing-contract teachers such as Mrs. Coyle on their own authority.

24.     For every year of her employment with the District, Mrs. Coyle received positive performance reviews from her supervisors.  She never received a negative annual review.

25.     During her employment with the District, Mrs. Coyle was never disciplined and never received a reprimand for any kind of alleged deficiency or misconduct.

26.     Like many public-school teachers, Mrs. Coyle was so dedicated to her job that she rarely called in sick and, at one point, had accumulated more than a hundred unused sick days.

27.     In 2019, Judith Mulkey, the school principal for whom Mrs. Coyle had worked the longest during her teaching career, wrote Mrs. Coyle a glowing letter of recommendation.

28.     In connection with the educational disruptions caused by the COVID-19 pandemic, Mrs. Coyle used Principal Mulkey's letter of recommendation to obtain a position in the District's virtual program.  Mrs. Coyle remodeled portions of her home at her own expense to better accommodate virtual teaching and learning.  She taught virtually for two years.

29.     On May 16, 2022, the District sent Mrs. Coyle a "**CONTINUING** contract" for the 2022-2023 school year, which stated that her next teaching assignment would be Sara Collins Elementary School ("Sara Collins").  Mrs. Coyle signed and returned the contract that same day.

30.     Mrs. Coyle began working as a first-grade teacher at Sara Collins, enjoyed her work in this new scholastic environment, and planned to continue working there until retirement.

31.    On October 22, 2022, Mrs. Coyle was severely injured as a result of a car wreck, in which the other driver ran a red light and struck Mrs. Coyle's vehicle so hard that the front of her vehicle was nearly shorn off, and what remained of her vehicle was sent into a violent spin.

32.    Mrs. Coyle's injuries included, but were not limited to, a Traumatic Brain Injury as well as injuries to her neck, back, and other areas of her body.

33.    Mrs. Coyle informed the District about the car wreck and her resulting injuries.  She used several of her accumulated sick days to convalesce.

34.    Out of dedication to her job and her students, Mrs. Coyle attempted to return to work in November 2022.

35.    Unfortunately, during several days of teaching, Mrs. Coyle's symptoms—including but not limited to dizziness, double vision, and migraine headaches—persisted to such a degree that she regrettably requested a leave of absence.  At that time, her physicians projected that she might be able to return to work by April 1, 2023, a date that fell later in that same school year.

36.    In an e-mail dated January 25, 2023, Defendant Noller informed Mrs. Coyle that the District had approved her leave of absence "with the use of sick days (if available) during this period.  Employees are allowed to use sick days while on approved leave when providing doctor's certification."  In this e-mail, Ms. Noller also informed Mrs. Coyle about the requirements "for an extended leave of absence beyond the April 1, 2023" date of her expected return.

37.    Defendant Noller's January 25 e-mail lacked clarity about certain other important matters and was very confusing, prompting Mrs. Coyle to request an in-person meeting so she could ask questions about what Ms. Noller meant by the unclear phrasing in her e-mail.

38.    Defendant Noller did not return multiple telephone calls, so Mrs. Coyle requested an in-person meeting via e-mail dated February 1, 2023.

39.     Defendant Noller denied Mrs. Coyle's request for an in-person meeting.  Instead, they had a telephone conversation on February 6, 2023.  This is the only time that Mrs. Coyle knows of in which the two of them spoke or interacted (other than by e-mail) before Ms. Noller abruptly informed her that the decision to terminate her employment had already been made.

40.     During this February 6 telephone conversation, Defendant Noller never stated that Mrs. Coyle's continued employment with the District was in jeopardy for any reason.

41.     During this February 6 telephone conversation, Defendant Noller reassured Mrs. Coyle that, notwithstanding the District's right to fill her current position at Sara Collins, it was unlikely that the District would do so; but if that were to happen, Ms. Noller said that the District would "guarantee a comparable position" at another of the District's schools.

42.     During this February 6 telephone conversation, Defendant Noller explained that if Mrs. Coyle had enough unused sick days to last until the end of that school year, she could count on remaining employed by the District at least until the beginning of the next school year (meaning the 2023-2024 school year) and would remain employed during the intervening summer.

43.     During this February 6 telephone conversation, when asked about how many unused sick days remained for Mrs. Coyle, Defendant Noller said that she did not know at that moment but that she would find out and report back.

44.     In an e-mail to Defendant Noller dated February 13, 2023, Mrs. Coyle stated: "I am just checking back with you to see if you were able to get the report stating when my last paid [sick] leave day would be.  Please email the date as soon as you know."

45.     The next day, Defendant Noller responded with the following quote, which she purportedly took from an e-mail from someone in the District's Payroll Department:

> "It looks like beginning 1/30/23, Ms. Coyle still has 77.5 sick leave days available, which, added to what she will continue to accrue, should give her enough time left

to cover the rest of the 22/23 school year if she is approved for use of sick leave.
She may actually end up with about 1 day left."

46.     This information about her sick-leave balance reassured Mrs. Coyle that she would remain employed as a District teacher at least until the beginning of the 2023-2024 school year, and that she would be allowed the summer months to recover so as to resume teaching when she returned—if not at Sara Collins, then at another of the District's schools.

47.     The above describes the plan that Defendant Noller proposed on February 6, 2023, to which Mrs. Coyle agreed.  As a result of Ms. Noller's plan, Mrs. Coyle was misled into believing that her continued employment as a District teacher was not in jeopardy.

48.     In early 2023, in response to her physicians' updated projections about her ability to return to work, Mrs. Coyle requested an extension of her medical leave until October 2023.

49.     While her request for a medical-leave extension was pending, Mrs. Coyle inquired by e-mail several times as to the status thereof.  In responding to Mrs. Coyle's e-mails, Defendant Noller never indicated that anything was amiss, that a medical-leave extension might be denied, or that the District would not honor the plan that they had agreed to during their February 6 telephone conversation.  In retrospect, it appears that Ms. Noller's replies were evasive.

50.     By e-mail dated April 27, 2023, while Mrs. Coyle's request for a medical-leave extension was pending, Defendant Noller abruptly announced the termination of Mrs. Coyle's employment, effective May 12, 2023.  Defendant Clements and others were copied on this e-mail.

51.     Upon information and belief, Defendant Noller acted at the behest of Defendant Clements, and in conformity with the District's official policies, practices, and customs, when making the "substantive decision" to announce the termination of Mrs. Coyle's employment without first affording Mrs. Coyle due process.

52.     Defendant Noller's e-mail did not state what authority might have authorized her to act alone and did not mention the Teacher Act or any right thereunder to challenge her decision.

53.     Before the announcement of her termination—and to this day, despite requests by Mrs. Coyle in writing—the District has failed or refused to provide Mrs. Coyle with notice of any charges against her, an explanation of the District's evidence supporting any misconduct on her part, or an opportunity to present her side of the story.

54.     The District has never issued Mrs. Coyle a "*Loudermill* letter," has never held a "*Loudermill* meeting" with her, has never initiated the administrative process required by the Teacher Act before terminating her employment, and has never fulfilled any of the Teacher Act's stated prerequisites before she could be subject to termination for cause thereunder.

55.     To spare herself the humiliation of being illegally terminated, and to preserve her pension rights and access to health insurance so she could continue to receive medical treatment for her various injuries, Mrs. Coyle had no choice but to retire from teaching during the two-week window between the April 27 e-mail and her scheduled termination date.  This cost her $84,354.90 to "buy back" three years, two months, and 18 days of service so as to qualify for early retirement.

56.     After devoting half of her life to the District and the education of her students, Mrs. Coyle is devastated by the District's betrayal and the loss of the profession that she loved.

## COUNT ONE: VIOLATION OF SECTION 1983 AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

57.     Plaintiff incorporates by reference paragraphs 1-56 as though fully set forth here.

58.     By virtue of the law of the State of South Carolina, Mrs. Coyle possessed a constitutionally protected property interest in continued employment with Defendant District.

59.    The District, acting through Defendants Clements and Noller, deprived Mrs. Coyle of her employment without first providing her due process as required by *Loudermill*.

60.    Mrs. Coyle has suffered considerable damages that are proximately caused by the illegal termination of her employment, including but not limited to lost wages both past and future, lost employment benefits, a diminution of her pension over the rest of her natural life, special damages in the amount of $84,354.90, and emotional distress.

## COUNT TWO: VIOLATION OF THE DUE PROCESS CLAUSE OF THE SOUTH CAROLINA CONSTITUTION

61.    Plaintiff incorporates by reference paragraphs 1-60 as though fully set forth here.

62.    Defendant District, acting through Defendants Clements and Noller, deprived Mrs. Coyle of her employment without first providing her with due process as required by Article I, Clause 3 of the South Carolina Constitution, proximately causing her considerable damages as stated above.

## COUNT THREE: WRONGFUL TERMINATION

63.    Plaintiff incorporates by reference paragraphs 1-62 as though fully set forth here.

64.    It has long been the public policy of the State of South Carolina, as evidenced by its enactment of the Teacher Act, to protect public-school teachers from termination of their employment without due process.

65.    Defendant District, acting through Defendants Clements and Noller, wrongfully terminated Mrs. Coyle's employment in violation of federal and state law, proximately causing her considerable damages as stated above.

**COUNT FOUR: VIOLATION OF THE PAYMENT OF WAGES ACT**

66.     Plaintiff incorporates by reference paragraphs 1-65 as though fully set forth here.

67.     In the alternative, due to the violation of Mrs. Coyle's rights to due process under both federal and state law by Defendants District, Clements, and Noller described above, the termination of Mrs. Coyle's employment is null and void.

68.     Since the termination of Mrs. Coyle's employment is not legally valid, she is owed wages and other benefits of employment (including, but not limited to, the value of her accrued-but-unused sick leave) from May 12, 2023, until such time (if ever) that her employment is legally and effectively terminated.

69.     Defendants Clements and Noller knowingly allowed Defendant District to violate the South Carolina Payment of Wages Act ("SCPWA") and thus they are subject to individual liability in addition to that of Defendant District.

**COUNT FIVE: BREACH OF CONTRACT**

70.     Plaintiff incorporates by reference paragraphs 1-69 as though fully set forth here.

71.     Defendant District entered into a binding contract to employ Mrs. Coyle for the 2022-2023 school year, and to continue employing her on a continuing-contract basis.

72.     The District breached its employment contract with Mrs. Coyle, proximately causing her considerable damages as stated above.

**COUNT SIX: INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**

73.     Plaintiff incorporates by reference paragraphs 1-72 as though fully set forth here.

74.     Defendants Clements and Noller knew about Mrs. Coyle's employment contract with the District.

75. Defendants Clements and Noller intended by their acts and omissions to procure a breach by the District of that employment contract without a legally cognizable justification.

76. As a result, Mrs. Coyle has suffered considerable damages as stated above.

## PART III: THE FRAUD AND DISCRIMINATION

77. As stated above, Defendant Noller—acting on behalf of Defendant District and at the behest of Defendant Clements—actively deceived Mrs. Coyle into believing that her employment with the District was secure, at least until the beginning of the 2023-2024 school year, because Mrs. Coyle had enough accumulated sick leave to remain on paid medical leave until then.

78. These three Defendants also deceived Mrs. Coyle into believing that Defendant District would honor the plan that Defendant Noller had proposed to keep Mrs. Coyle employed until then, while these three Defendants never had any intention of honoring that plan.

79. In addition, these three Defendants deceived Mrs. Coyle in other ways.

80. As an employee of Defendant District, Mrs. Coyle was provided with Long-Term Disability Insurance ("LTD"), underwritten by the District's LTD insurance carrier.

81. Within a month of being hired by Defendant District in 1998, Mrs. Coyle also enrolled in Supplemental Long Term Disability Insurance, which she paid for herself with deductions from her salary, also underwritten by the District's LTD insurance carrier.

82. Mrs. Coyle reasonably believed that Defendant District had her best interests at heart in offering her LTD insurance and had no reason to believe that these three Defendants would one day—more than two decades in the future—use this against her.

83. During the February 6 telephone call described above, Defendant Noller brought up the topic of LTD insurance. She encouraged Mrs. Coyle to submit an application for LTD

benefits without delay. Ms. Noller presented this as a lark, indicating that Mrs. Coyle ought to apply for LTD benefits and see what happens. Ms. Noller said: "What do you have to lose?"

84. During that February 6 telephone call, while encouraging Mrs. Coyle to apply for LTD benefits, Defendant Noller deliberately failed to mention that there might be negative repercussions for Mrs. Coyle's continued employment as a District teacher if she were to do as Ms. Noller instructed.

85. During that February 6 telephone call, Defendant Noller deliberately withheld such information, which was her responsibility to know as Defendant District's Leave Administrator, so as to trick Mrs. Coyle into giving the District a legally flawed excuse to summarily terminate her employment without due process.

86. Shortly after that February 6 telephone call, Defendant Noller mailed to Mrs. Coyle a blank application for LTD benefits under the above-described LTD insurance policies. Ms. Noller made this mailing unbidden—Mrs. Coyle did not ask her to mail such an application.

87. Unfortunately, as a result of her Traumatic Brain Injury, Mrs. Coyle was unable to focus on paperwork in February 2023. She did not complete that LTD application.

88. About a month after Mrs. Coyle had received the first unsolicited LTD application from Defendant Noller, she received a second unsolicited LTD application.

89. The cover letter, dated March 7, 2023, that accompanied the second unsolicited LTD application, stated in bold and italics: "***An employee must make a claim for long-term disability while he/she is still employed***."

90. Nowhere in the packet that Mrs. Coyle received was it stated that there might be negative repercussions for her continued employment as a District teacher if she were to fill out and submit the application for LTD benefits that had been mailed to her unbidden.

91.     Defendant District's persistence in repeatedly urging Mrs. Coyle to apply for LTD benefits, coupled with Defendant Noller's express representations and assurances that Mrs. Coyle had nothing to fear from doing so, convinced Mrs. Coyle to fill out an application for LTD benefits, as it seemed to be important to the District that she do so and she wanted to cooperate.

92.     Filling out the application for LTD benefits proved difficult for Mrs. Coyle, since it was then physically painful for her to concentrate so as to answer all of the questions asked in the application, but she powered through and did so regardless, because she trusted Defendant Noller and had no reason to believe at that time that Ms. Noller was trying to do her harm.

93.     Mrs. Coyle relied on Defendant Noller's statements, representations, promises, and assurances recounted above to her detriment.

94.     Defendant Noller knew or should have known that Mrs. Coyle would rely on her statements, representations, promises, and assurances in light of Ms. Noller's position with the District, her superior knowledge of human-resources-related matters, her conduct, and her invitation to contact her if Mrs. Coyle had "any questions or concerns about [her] medical leave."

95.     Defendant Noller intentionally and knowingly took advantage of a dedicated teacher who was suffering from a Traumatic Brain Injury and thus would be more susceptible to being tricked in this way.

96.     Upon information and belief, Defendant Noller was operating under the guidance and at the behest of Defendant Clements, her supervisor, to advance Defendant District's interests at the expense of Mrs. Coyle's.

97.     Well after the fact—in 2025—Mrs. Coyle learned that both Defendants Clements and Noller had received an e-mail dated April 26, 2023—the day before Ms. Noller's April 27 e-mail announcing Mrs. Coyle's termination—stating, in pertinent part, as follows:

**Sick Days/Unpaid:** 41 sick days remaining as of 3/31 (lasting through approx. 6/1).

**Proposal:** Coordinate meeting between employee [Mrs. Coyle] and benefits department.  Approve for two week extension to allow for transition of benefits and/or retirement application, then separate based on LTD approval.

**Approve/Denial—Comments:** Please set up meeting with Benefits.  Confirm if/when employee approved through LTD.  At that time, we can communicate with the employee in writing.

98.    Aside from the fact that no meeting between Mrs. Coyle and "Benefits" ever took place, Defendant Noller followed the above-quoted e-mail to the letter.  She did not "communicate with the employee in writing" about the trap that she had set until the following day.

99.    Defendant Noller actively deceived Mrs. Coyle regarding LTD benefits in furtherance of Defendant District's official policy, practice, and/or custom of using receipt of LTD benefits to attempt to evade the due-process requirements of *Loudermill* and the Teacher Act.

100.    Upon information and belief, Defendant District has an official policy, practice, and/or custom of retaining certain employees who engage in misconduct—by either suspending them with pay or reassigning them to administrative positions away from the classroom—until their situations resolve or they retire.  These opportunities for continued employment were never offered to Mrs. Coyle.

101.    Defendant District's official policy, practice, and/or custom discriminates against teachers with disabilities because, as a class, they are treated worse than District employees who engage in misconduct.

## COUNT SEVEN: VIOLATION OF SECTION 1983 AND THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

102.    Plaintiff incorporates by reference paragraphs 1-101 as though fully set forth here.

103.     Defendants District, Clements, and Noller knew that Mrs. Coyle was suffering from various disabilities caused by the October 2022 car wreck.

104.     These three Defendants discriminated against Mrs. Coyle on account of her disabilities by orchestrating her illegal termination, when similarly situated employees who had engaged in misconduct would have been accommodated and allowed to continue being employed until their situations resolved or they qualified for retirement.

105.     As a result, Mrs. Coyle has suffered considerable damages as stated above.

## COUNT EIGHT: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE SOUTH CAROLINA CONSTITUTION

106.     Plaintiff incorporates by reference paragraphs 1-105 as though fully set forth above.

107.     Defendant District, acting through Defendants Clements and Noller, discriminated against Mrs. Coyle in violation of Article I, Clause 3 of the South Carolina Constitution, proximately causing her considerable damages as stated above.

## COUNT NINE: BREACH OF FIDUCIARY DUTY

108.     Plaintiff incorporates by reference paragraphs 1-107 as though fully set forth above.

109.     Defendant Noller, acting on behalf of Defendant District and with the knowledge of Defendant Clements, breached a fiduciary duty owed to Mrs. Coyle, proximately causing her considerable damages as stated above.

## COUNT TEN: ACTUAL FRAUD

110.     Plaintiff incorporates by reference paragraphs 1-109 as though fully set forth above.

111.    Defendant Noller, acting on behalf of Defendant District and with the knowledge of Defendant Clements, made multiple false representations of material fact described above, with either knowledge of their falsity or reckless disregard for their truth or falsity.

112.    These three Defendants intended for Mrs. Coyle to act upon those false representations while reasonably relying on their truth and in ignorance of their falsity.

113.    Mrs. Coyle relied and acted on those false representations to her detriment, proximately causing her considerable damages as stated above.

### COUNT ELEVEN: CONSTRUCTIVE FRAUD

114.    Plaintiff incorporates by reference paragraphs 1-113 as though fully set forth here.

115.    Defendant Noller, acting on behalf of Defendant District and with the knowledge of Defendant Clements, made multiple false representations of material fact described above, that they ought to have known were false.

116.    These three Defendants intended for Mrs. Coyle to act upon those false representations while reasonably relying on their truth and in ignorance of their falsity.

117.    Mrs. Coyle relied and acted on those false representations to her detriment, proximately causing her considerable damages as stated above.

### COUNT TWELVE: BREACH OF CONTRACT ACCOMPANIED BY FRAUDULENT INTENT

118.    Plaintiff incorporates by reference paragraphs 1-17 as though fully set forth here.

119.    Defendant District breached its contract with Mrs. Coyle, with fraudulent intent relating to the breach, and with Defendant Noller's fraudulent acts accompanying the breach.

120.    As a result, Mrs. Coyle has suffered considerable damages as stated above.

## COUNT THIRTEEN: PROMISSORY ESTOPPEL

121.    Plaintiff incorporates by reference paragraphs 1-120 as though fully set forth here.

122.    Defendant Noller, acting on behalf of Defendant District and with the knowledge of Defendant Clements, promised that Mrs. Coyle would remain employed, at least until the beginning of the 2023-2024 school year, because Mrs. Coyle had enough accumulated sick leave to remain on paid medical leave until then.

123.    Mrs. Coyle reasonably relied on Defendant Noller's promise to her detriment, which these three Defendants expected and was foreseeable, proximately causing her considerable damages as stated above.

## COUNT FOURTEEN: VIOLATION OF THE UNFAIR TRADE PRACTICES ACT

124.    Plaintiff incorporates by reference paragraphs 1-123 as though fully set forth here.

125.    Defendant District, acting through Defendants Clements and Noller, violated the South Carolina Unfair Trade Practices Act ("SCUTPA"), doing harm to the public interest in prohibiting the termination of public-school teachers without due process, which also proximately caused Mrs. Coyle's considerable damages as stated above.

## PART IV: THE COVER-UP AND CONSPIRACY

126.    As a result of its written policy requiring maintenance of employment files—designated "GAK," and entitled "Personnel Records and Files"—Defendant District had a contractual obligation to preserve certain evidence and prevent spoliation thereof.

127.    As an attorney and officer of the Court, Defendant Webb is both legally and ethically obligated to preserve evidence and prevent spoliation.

128.    Among other resources available to him as Defendant District's General Counsel, Defendant Webb has at his disposal Leslie Lambert, "a certified security technician with Information Security within the Education Technology Department of Greenville County Schools," who is "responsible for responding to searches in response to Freedom of Information Act requests, computer forensics, [and] data preservation in response to legal holds. . . ."

129.    In a letter dated July 24, 2023—less than two months after Mrs. Coyle's termination was announced—her husband (who also happens to be a lawyer) sent a letter on his law firm's letterhead in which he expressed Mrs. Coyle's objections to her illegal termination.

130.    This letter also initiated the appeal process concerning the District's LTD insurance carrier's improper withholding of $14,404.94 from Mrs. Coyle's monthly LTD benefits that purportedly represented the unused sick leave that she had accumulated before her termination.

131.    "In closing," this letter stated:

> [W]e respectfully suggest that you and/or your counsel contact the District's counsel and resolve among yourselves whatever disputes you may have so as to avoid further damaging Heather's interests. We expect that, thereafter, we will receive a proposal from you both that aims to make Heather whole, one way or the other. If such is not forthcoming in a reasonable time, we will have no choice but to proceed accordingly. We reserve all rights.

132.    This letter was sent by certified mail to both the District's LTD insurance carrier and Defendant Webb. According to the certified-mail receipt, Defendant District received this letter on August 2, 2023, as it was signed by someone named Jarvis Robinson on that date.

133.    Defendant Webb does not deny receiving this letter. Indeed, in an affidavit, he stated that he "recall[s] receiving from Mr. Coyle . . . a letter that he had sent to The Standard, which is a third-party company that provides long-term disability insurance coverage to District employees, in which he communicated disagreement with that company regarding financial payments Heather Coyle was receiving due to disability."

134.    In so stating, Defendant Webb left out the part—appearing on pages two through four of that letter—in which the events that led to the District's illegal termination of Mrs. Coyle's employment, as well as Defendant Noller's involvement in same, were spelled out in detail.

135.    Defendant Webb never responded to Mr. Coyle's appeal/demand letter.

136.    More recently, Defendant District stated that it "is unaware of the August 2, 2023 letter . . . and had no reason to anticipate litigation prior to . . . January 3, 2025," notwithstanding Defendant Webb's sworn statement in his affidavit to the contrary.

137.    Upon information and belief, following receipt of Mr. Coyle's appeal/demand letter on August 2, 2023, neither Defendant District nor Defendant Webb instituted a "litigation hold," or took any other action, to preserve and prevent spoliation of evidence relevant to Mrs. Coyle's appeal of The Standard's improper withholding of LTD benefits, or her legal claims against the District and others stated in this Complaint, or both.

138.    This lack of action on the part of Defendants District and Webb was brought to their mutual attention in writing on or about February 18, 2025, but still they took no action.

139.    Upon information and belief, Defendant Webb, who is "responsible for reviewing and drafting [Board of Trustees] policies," has not drafted an appropriate and effective policy for Defendant District governing litigation holds and preventing spoliation.

140.    Upon information and belief, Defendant District's official policy, practice, and/or custom is to leave it up to each of its myriad of District employees to decide for themselves "their retention or lack of retention of records."

141.    At some point, in response to Mrs. Coyle's FOIA request, Ms. Lambert, "with the assistance of another forensic specialist," searched and captured "digital images of" ten specified "employee email accounts . . . from July 1, 2022 until the present using 'Coyle' as the search term."

142.     According to Ms. Lambert, "The search did not produce any responsive emails from the email accounts of Kaitlyn Noller, Matthew Vanderbilt, or Debin Hammond."  Each of these District employees played some role (albeit the full extent is unknown by Mrs. Coyle at present) in the termination of Mrs. Coyle's employment.

143.     According to Ms. Lambert, "Marianne [*sic*] McKinney [*sic*]," another District employee who played some role in Mrs. Coyle's termination, "is no longer an active employee and there is not an active email account that remains in existence for that former employee."  Ms. Lambert did not specify when Mariann McKenney allegedly ended her District employment.

144.     After performing her search, Ms. Lambert "downloaded the responsive emails to the Office of General Counsel for Greenville County School District."

145.     Only one e-mail—the one dated April 26, 2023, which was sent to both Defendants Clements and Noller and is quoted above—was recovered from Defendant Clements's e-mail account and produced, in redacted form, in response to Mrs. Coyle's FOIA request.

146.     Notwithstanding that she is the primary actor who orchestrated Mrs. Coyle's termination, not a single e-mail was recovered from Defendant Noller's e-mail account and produced in response to Mrs. Coyle's FOIA request.

147.     Notwithstanding Defendant Noller's sworn statement that she "consulted with [Defendant Clements] regarding any substantive decision related to Ms. Coyle's [medical] leave or continued employment," not a single e-mail exchange between them was recovered by Ms. Lambert and produced in response to Mrs. Coyle's FOIA request.

148.     In her affidavit, Defendant Noller attempted to explain why:

I routinely delete emails that are no longer necessary for retention so that my email storage capacity is not reached.  I will print any email or electronic record necessary for retention and place that record in an employee's leave file prior to deleting an email.  I was not made aware that Ms. Coyle had made a Freedom of Information

Request for public records related to her employment until completing this affidavit during the week of March 10, 2025. . . . It is likely that I deleted emails pertaining to Ms. Coyle as part of my normal practices of email retention related to employee leave for all employees.

149. It was Defendant Webb's responsibility to inform Defendant Noller not to delete her e-mails related to Mrs. Coyle's employment and the termination thereof, and yet, as late as last month, Defendant Noller claims to have been "not made aware" that such was necessary.

150. Aside from whatever Defendant Noller decided to add to Mrs. Coyle's employment files, not a single e-mail between any of Defendant District's employees and The Standard was recovered by Ms. Lambert and produced in response to Mrs. Coyle's FOIA request.

151. In addition to all those missing e-mails, Defendant District has spoliated other documents that should have been found in Mrs. Coyle's employment files, including more than two decades of positive annual reviews, her pay stubs, and her W2 forms, among other things.

152. Mrs. Coyle's administrative appeal of The Standard's improper withholding of $14,404.94 from her monthly LTD benefits remains ongoing. To the best of her knowledge, no final decision has yet been rendered by the Public Employee Benefit Authority ("PEBA"). Her ability to contest The Standard's improper withholding has been significantly hampered by these four Defendants, who each chose of their own volition not to preserve evidence related thereto.

153. After her husband wrote five letters on Mrs. Coyle's behalf, The Standard eventually refunded a total of $1,345.21 that it had improperly classified as post-disability sick pay. However, the remaining $13,059.73 is still in dispute. Without the evidence that the Defendants spoliated, it is substantially likely that Mrs. Coyle's administrative appeal to PEBA will fail, necessitating further litigation on appeal to the state circuit court or this Court.

154. Moreover, it should go without saying that these four Defendants, through spoliation, have significantly hampered Mrs. Coyle's ability to pursue the instant lawsuit.

**COUNT FIFTEEN: DENIAL OF ACCESS TO COURTS IN VIOLATION OF SECTION 1983 AND VARIOUS U.S. CONSTITUTIONAL PROVISIONS**

155.    Plaintiff incorporates by reference paragraphs 1-154 as though fully set forth here.

156.    The right to access to courts is grounded in various provisions of the U.S. Constitution, including "the Article IV Privileges and Immunities Clause," "the First Amendment Petition Clause," "the Fifth Amendment Due Process Clause," "and the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury,* 536 U.S. 403, 415 n.12 (2002) (citations omitted). This federal right to access to courts includes "forward-looking and backward-looking access claims," (*id.* at 414 n.11), meaning those that have already been lost due to spoliation and those that have not yet been tried but might be lost due to spoliation.

157.    Defendant District, acting through Defendants Webb, Clements, and Noller, have violated Mrs. Coyle's right to access to courts regarding the claims that she asserts against them in this lawsuit as well as her ongoing administrative appeal to PEBA.

158.    If Mrs. Coyle ultimately fails in either respect as a result of these four Defendants spoliating evidence, they would be liable for any lost damages claims in either case.

**COUNT SIXTEEN: DENIAL OF ACCESS TO COURTS IN VIOLATION OF THE SOUTH CAROLINA CONSTITUTION**

159.    Plaintiff incorporates by reference paragraphs 1-158 as though fully set forth here.

160.    The right to access to courts is guaranteed by Article I, Section 9 of the South Carolina Constitution.

161.    Defendant District, acting through Defendants Webb, Clements, and Noller, have violated Mrs. Coyle's right to access to courts regarding the claims that she asserts against them in this lawsuit as well as her ongoing administrative appeal to PEBA.

162.    If Mrs. Coyle ultimately fails in either respect as a result of these four Defendants spoliating evidence, they would be liable for any lost damages claims in either case.

### COUNT SEVENTEEN: INTENTIONAL FIRST-PARTY SPOLIATION

163.    Plaintiff incorporates by reference paragraphs 1-162 as though fully set forth here.

164.    The Defendants willfully spoliated evidence with the intent to interfere with this lawsuit against them, which they should have anticipated long ago.

165.    If the other claims in this lawsuit fail, it would be because of such spoliation, thereby proximately causing Mrs. Coyle's considerable damages as stated above.

### COUNT EIGHTEEN: INTENTIONAL THIRD-PARTY SPOLIATION

166.    Plaintiff incorporates by reference paragraphs 1-165 as though fully set forth here.

167.    The Defendants willfully spoliated evidence with the intent to interfere with Mrs. Coyle's administrative appeal to PEBA.

168.    If Mrs. Coyle's administrative appeal to PEBA fails, it would be because of such spoliation, thereby proximately causing Mrs. Coyle to be damaged in the amount of $13,059.73 plus whatever she would have been able to recover pursuant to an insurance bad-faith claim.

### COUNT NINETEEN: CIVIL CONSPIRACY TO DEPRIVE CIVIL RIGHTS IN VIOLATION OF SECTION 1985

169.    Plaintiff incorporates by reference paragraphs 1-168 as though fully set forth here.

170.    The Defendants, along with The Standard, entered into an agreement and/or understanding to deprive Mrs. Coyle of her constitutional right to due process and her continued employment, and committed numerous overt acts in furtherance thereof, thereby proximately causing Mrs. Coyle's considerable damages as stated above.

## COUNT TWENTY: CIVIL CONSPIRACY UNDER STATE LAW

171.    Plaintiff incorporates by reference paragraphs 1-170 as though fully set forth here.

172.    The Defendants combined among themselves, and with The Standard, for the purpose of injuring Mrs. Coyle, proximately causing her to suffer special damages.

## PART V: REQUESTS FOR RELIEF

Plaintiff respectfully requests an order and judgment:

1.    Declaring that the termination of Mrs. Coyle's employment is illegal and void.

2.    Declaring that the District's official policy, practice, and/or custom of using an employee's receipt of LTD benefits, after failing or refusing to disclose the possible consequences thereof, as an excuse to terminate said employee without due process, is illegal and void.

3.    Awarding Mrs. Coyle nominal damages in the amount of $1 for each violation of her constitutional, statutory, and/or common-law rights under either federal or state law.

4.    Awarding Mrs. Coyle actual and consequential damages reflecting lost wages both past and future.

5.    Awarding Mrs. Coyle actual and consequential damages reflecting lost employment benefits (including, but not limited to, the cost of health insurance).

6.    Awarding Mrs. Coyle actual and consequential damages reflecting the diminution of her pension over the rest of her natural life.

7.    Awarding Mrs. Coyle actual and consequential damages to compensate for her emotional distress.

8.    Awarding Mrs. Coyle special damages in the amount of $84,354.90, which is an out-of-pocket loss incurred by her so as to mitigate her damages.

9.     Awarding Mrs. Coyle special damages in the amount of $13,059.73, reflecting the value of accrued-but-unused sick leave.

10.     Awarding Mrs. Coyle special damages reflecting the aforementioned $13,059.73, plus whatever damages she would have been able to recover pursuant to claims against The Standard (including, but not limited to, damages recoverable via an insurance bad-faith claim), if she ultimately loses her administrative appeal to PEBA and any judicial appeals thereafter.

11.     Awarding treble damages pursuant to SCPWA, S.C. CODE § 41-10-80, and/or SCUTPA, S.C. CODE § 39-5-140.

12.     Awarding Mrs. Coyle punitive damages to the extent permitted by law.

13.     Awarding Mrs. Coyle prejudgment and post-judgment interest, at their respective statutory rates, to the extent permitted by law.

14.     Awarding Mrs. Coyle—pursuant to 42 U.S.C. § 1988, S.C. CODE § 41-10-80, S.C. CODE § 39-5-140, and/or other governing federal or state law, as the case may be—reasonable costs and attorney's fees incurred in connection with this action, as well as any that may be incurred in connection with any necessary efforts to enforce and collect on this Court's judgment.

15.     Awarding Mrs. Coyle any such other and further relief as this Court may deem just.

Respectfully submitted this 15th day of April 2025.

    /s/ Kevin J. Coyle_____
Kevin J. Coyle
DSC Bar No. 14439
SC Bar No. 71663
104 Brittle Creek Lane
Simpsonville, SC 29680
(864) 908-1938
k.coyle@charter.net
Attorney for Plaintiff