IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Heather Coyle,<br><br>Plaintiff,<br><br>v.<br><br>Greenville County School District, Morgan Clements, Kaitlyn Noller, R. Douglas Webb, John and Jane 1–10 Does,<br><br>Defendants. | Case No. 6:25-cv-03185-JDA-KFM<br><br>**<u>OPINION AND ORDER</u>** |

This matter is before the Court on a partial motion to dismiss filed by Defendants Greenville County School District (the "District"), Morgan Clements, Kaitlyn Noller, and R. Douglas Webb (collectively, the "Moving Defendants") and a motion for leave to amend the Complaint filed by Plaintiff. [Docs. 6; 23.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Kevin F. McDonald for pre-trial proceedings.

On September 29, 2025, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the Court grant in part and deny in part the partial motion to dismiss. [Doc. 21.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [*Id.* at 28.] Plaintiff filed objections to the Report,

the Moving Defendants filed a reply to Plaintiff's objections, and Plaintiff filed a sur-reply.[1] [Docs. 22; 24; 27.]

Plaintiff also filed a motion for leave to amend the Complaint. [Doc. 23.] The Moving Defendants filed a response in opposition to the motion for leave to amend the Complaint, and Plaintiff filed a reply. [Docs. 25; 28.] The motions are ripe for review.

**BACKGROUND**

The Magistrate Judge accurately summarized the factual background of this case as follows:

> This case arises out of an employment dispute between [P]laintiff, a former teacher with the District, and the District and its employees. [P]laintiff started working for the District in August 1998 on a continuing-contract basis. Within a month of her employment, the District provided [P]laintiff with long-term disability ("LTD") insurance, and [P]laintiff purchased supplemental LTD coverage. On May 16, 2022, she received, signed, and returned a continuing contract for the 2022–2023 school year to work as a first grade teacher within the District.
>
> On October 22, 2022, [P]laintiff suffered, among other injuries, a traumatic brain injury ("TBI") in a car accident. She notified the District about her injuries, used her accumulated sick days to recover, and attempted to return to work in November 2022. Because she continued to have problems related to her TBI, [P]laintiff requested a leave of absence, and her doctor predicted she might be able to teach by April 1, 2023. On January 25, 2023, [D]efendant Noller, the District's leave administrator, emailed [P]laintiff that the District had approved her leave; reminded her that she could use her sick days; and informed her of the requirements "for an extended leave of absence beyond April 1, 2023."

[1] The Federal Rules of Civil Procedure do not provide for sur-replies to objections to Reports and Recommendations. Fed. R. Civ. P. 72(b)(2). However, out of an abundance of caution, the Court has considered Plaintiff's sur-reply in ruling on the pending motions and Report. Nevertheless, the Court reminds Plaintiff that, in the future, if she wishes to file a sur-reply, or any other filing not provided for in the Federal Rules of Civil Procedure, she should file a motion seeking leave to file a sur-reply.

[P]laintiff requested an in-person meeting to discuss this email, and [D]efendant Noller denied this request but called [P]laintiff on February 6, 2025.

[P]laintiff claims that, during this phone call, [D]efendant Noller reassured [P]laintiff that it was unlikely the District would replace [P]laintiff, but if it did, it would "guarantee a comparable position" at another school within the District. Defendant Noller said that she did not know how many sick days [P]laintiff had, but, if [P]laintiff had enough unused sick days to last until the end of the school year, she could remain employed through the summer until the beginning of the 2023–2024 school year. [P]laintiff also contends that [D]efendant Noller encouraged [P]laintiff to apply for LTD benefits "without delay". [P]laintiff alleges that at some point [D]efendant Noller invited [P]laintiff to contact [D]efendant Noller if she had "any questions or concerns about [her] medical leave."

After this call, [P]laintiff again asked how many sick days she had left, and [D]efendant Noller replied stating that [P]laintiff had 77.5 unused sick days as of January 30, 2023, which should give [P]laintiff enough sick days for the rest of the current school year "if [Plaintiff] is approved for use of sick leave." Defendant Noller also twice sent [P]laintiff a blank application for LTD benefits from The Standard, the District's LTD insurer, and included a March 7, 2023 cover letter with the second application stating "An employee must make a claim for long-term disability while he/she is still employed". While still employed, [P]laintiff did apply for LTD benefits.

Also in early 2023, after her doctor updated her projected return-to-work date, [P]laintiff requested the District extend her leave until October 2023. On April 27, 2023, while [P]laintiff's request for leave was still pending, [D]efendant Noller emailed [P]laintiff to inform her that the District would be terminating her employment on May 12, 2023. The District never sent [P]laintiff a *Loudermill* letter and did not give [P]laintiff a hearing. To preserve her pension rights and medical insurance, [P]laintiff retired, which cost her $84,354.90 to buy enough service time to qualify.

On July 23, 2023, [P]laintiff's lawyer sent a letter *via* certified mail to the District objecting to the District's termination of her employment and starting the appeal process for The Standard's withholding of $14,404.94, which

> represents [P]laintiff's accumulated unused sick leave. The Standard eventually refunded $1,345.21, leaving $13,059.73 in LTD benefits allegedly due. [P]laintiff further alleges that neither the District nor [D]efendant Webb, the District's general counsel, took any action to preserve evidence or prevent the spoliation of evidence relevant to her appeal. After [P]laintiff requested emails through the South Carolina Freedom of Information Act ("SC FOIA"), the District provided one email from [D]efendant Clements' email account.
>
> On April 15, 2025, [P]laintiff filed her [C]omplaint in this court, alleging twenty causes of action: (1) violation of her rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution brought pursuant to § 1983; (2) violation of her rights under the Due Process Clause of the South Carolina Constitution; (3) wrongful termination; (4) violation of the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.* ("SCPWA"); (5) breach of contract; (6) interference with a contractual relationship; (7) violation of her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution brought pursuant to § 1983; (8) violation of her rights under the Equal Protection Clause of the South Carolina Constitution; (9) breach of fiduciary duty; (10) actual fraud; (11) constructive fraud; (12) breach of contract accompanied by fraudulent intent; (13) promissory estoppel; (14) violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.* ("SCUTPA"); (15) denial of access to courts in violation her rights under the United States Constitution brought pursuant to § 1983; (16) denial of access to courts in violation of her rights under the South Carolina Constitution; (17) intentional first-party spoliation; (18) intentional third-party spoliation; (19) civil conspiracy to deprive civil rights in violation of 42 U.S.C. § 1985; and (20) civil conspiracy under state law.

[Doc. 21 at 1–4 (record citations, footnotes, and emphasis omitted) (some alterations in original).] Plaintiff seeks declaratory relief, nominal damages, actual and consequential damages, special damages, treble damages, punitive damages, prejudgment and post-judgment interest, and costs and attorneys' fees. [Doc. 1 at 27–28.]

## DISCUSSION

### The Moving Defendants' Partial Motion to Dismiss[2]

#### *Standard of Review*

With respect to the Moving Defendants' partial motion to dismiss, the Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

#### *The Report*

As noted, the Magistrate Judge recommends that the Court grant in part and deny in part the Moving Defendants' partial motion to dismiss. [Doc. 21.] The Magistrate Judge explained that, in response to the Moving Defendants' partial motion to dismiss, Plaintiff withdrew her claims for violation of her rights under the South Carolina Constitution to

---

[2] The Magistrate Judge accurately summarized the relevant motion to dismiss standard. [Doc. 21 at 4–5.] Accordingly, the Court does not repeat that standard.

equal protection and to access to courts. [*Id.* at 19, 22.] Accordingly, the Magistrate Judge recommends that those claims be dismissed. [*Id.*]

First, the Magistrate Judge recommends that Plaintiff's wrongful termination and promissory estoppel claims be dismissed as against Clements and Noller because they cannot be personally liable for these claims under the SCTCA. [*Id.* at 5–8.] Next, the Magistrate Judge recommends that Plaintiff's § 1983 due process and denial of access to courts claims against Clements and Noller be dismissed as duplicative because they are asserted against Clements and Noller only in their official capacities. [*Id.* at 8–9.] However, he concluded that Plaintiff's § 1983 equal protection claim is asserted against Clements and Noller in their individual capacities and, therefore, it should not be dismissed. [*Id.*] Additionally, the Magistrate Judge concluded that Clements and Noller are entitled to qualified immunity on Plaintiff's § 1983 procedural due process claim. [*Id.* at 10–17.]

The Magistrate Judge also concluded that Plaintiff's SCPWA claim should be dismissed because the SCPWA does not apply to prospective wages and Plaintiff does not allege she is owed any past wages from Defendants; her interference with contractual relationship claim should be dismissed because Clements and Noller could not have tortiously interfered with a contract with the District, as they were agents and employees of the District and Plaintiff has not pleaded that they acted outside of the scope of their employment; her breach of fiduciary duty claim should be dismissed because the Complaint fails to sufficiently plead a fiduciary relationship between Plaintiff and the District; her SCUTPA claim should be dismissed because employment actions are not covered by the SCUTPA and teaching at a public school does not fall within the definition

of "trade or commerce"; her § 1983 denial of access to courts claim should be dismissed because the Complaint fails to identify any cause of action that was purportedly lost and unavailable because of Defendants' actions; her first- and third-party intentional spoliation claims should be dismissed because these causes of action would not be recognized under South Carolina law; her § 1985 civil conspiracy claim should be dismissed because the Complaint contains only conclusory allegations regarding this claim and the intracorporate conspiracy doctrine prohibits the claim to the extent the alleged conspiracy was between the District and its employees acting within the scope of their official capacities; and her state civil conspiracy claim should be dismissed because it merely incorporates facts from other causes of action, fails to plead any facts showing an agreement between Defendants and The Standard, and is prohibited by the intracorporate conspiracy doctrine. [*Id.* at 17–26.]

***Plaintiff's Objections and the Court's Analysis***

Plaintiff does not specifically object to the Magistrate Judge's recommendation to dismiss her state equal protection, state denial of access to courts, SCPWA, interference with contractual relationship, breach of fiduciary duty, SCUTPA, § 1983 denial of access to courts, first-party intentional spoliation, third-party intentional spoliation, § 1985 civil conspiracy, and state civil conspiracy claims. [*See generally* Docs. 22; 27.] Accordingly, the Court has reviewed the Report, the record, and the applicable law regarding those claims for clear error. Having found no clear error, the Court accepts the Report with respect to the recommendations that those claims be dismissed and incorporates it by reference. Additionally, no party has objected to the Magistrate Judge's recommendation that the partial motion to dismiss be denied as to Plaintiff's § 1983 equal protection claim

against Clements and Noller in their individual capacities. [*See generally* Docs 22; 24; 27.] Accordingly, the Court has reviewed the Report, the record, and the applicable law regarding that claim for clear error. Having found no clear error, the Court accepts the Report with respect to the recommendation that Plaintiff's § 1983 equal protection claim not be dismissed.

The Court will now turn to Plaintiff's specific objections.

Whether Clements and Noller Have Personal Liability Under the SCTCA

As previously stated, the Magistrate Judge recommends that Plaintiff's wrongful termination and promissory estoppel claims be dismissed as against Clements and Noller because they are immune from suit with respect to these claims under the SCTCA. [Doc. 21 at 5–8.] In her objections, Plaintiff argues that the Eleventh Affirmative Defense in the Moving Defendants' original Answer—asserting that "[i]f any allegations of unlawful conduct are true, the District's employees implicated in those allegations acted on their own, in violation of the District's policies prohibiting such conduct, and acted outside the scope of their employment" [Doc. 8 at 21]—is an evidentiary admission that Clements and Noller acted outside the scope of their employment, which is an exception to individual immunity under the SCTCA. [Doc. 22 at 32–33.] Plaintiff acknowledges that the Moving Defendants subsequently filed an Amended Answer but contends that the original Eleventh Affirmative Defense may still be treated as an "evidentiary admission [that] create[s] an issue of fact regarding the individual defendants' scope of employment that should not have been resolved against [Plaintiff] at this stage of the proceedings." [*Id.*]

Here, with respect to whether Clements and Noller acted outside the scope of their employment, the Magistrate Judge correctly focused on *the allegations in the Complaint*, concluding that it "alleges that the . . . District acted through [D]efendants Clements and/or Noller for her wrongful termination and promissory estoppel claims" and "that if [the] District was acting through or with these employees[,] these alleged actions were within the course and scope of their employment with [the] District." [Doc. 21 at 7]; *see Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (noting that "[t]he purpose of a Rule 12(b)(6) motion is to test *the sufficiency of a complaint*" and that courts do not address the applicability of defenses when considering a Rule 12(b)(6) motion (emphasis added)). Moreover, as the Magistrate Judge stated, an amended pleading supersedes the original pleading. [Doc. 21 at 6 n.4 (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001))]; *see also* 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476 (3d ed. 2011) ("A pleading that has been amended . . . supersedes the pleading it modifies . . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ."). The cases Plaintiff cites to support her argument that allegations in original pleadings may operate as evidentiary admissions do not stand for the proposition that the Court may rely on these purported evidentiary admissions at the motion to dismiss stage. *See Sammons v. McCarthy*, 606 F. Supp. 3d 165, 217 n.26 (D. Md. 2022) (recognizing, when ruling on a motion to dismiss, that, "*in later stages of litigation*, a 'superseded pleading may be offered in evidence rebutting a subsequent contrary assertion'" (quoting *New Hickory Pizza, Inc. v. TIG Ins.*, No. 5:16-cv-00164-RLV-DSC, 2017 WL 3840278, at *7 (W.D.N.C. Sept. 1, 2017)) (emphasis added)); *New Hickory Pizza*, 2017 WL 3840278, at *7 ("[A]t the motion to dismiss stage,

when the district court may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint." (internal quotation marks omitted)); *Matter of Fordson Engineering Corp.*, 25 B.R. 506, 509 (E.D. Mich. Bankr. 1982) (concluding that statements in a superseded answer were not judicial admissions but instead were evidentiary admissions that could be introduced to the trial court and would be subject to explanation or contradiction). Accordingly, the Court overrules this objection.

Whether Clements and Noller Are Entitled to Qualified Immunity on Plaintiff's § 1983 Procedural Due Process Claim

As stated above, the Magistrate Judge concluded that Clements and Noller are entitled to qualified immunity on Plaintiff's § 1983 procedural due process claim. [Doc. 21 at 10–17.] In reaching this conclusion, the Magistrate Judge addressed both prongs of the qualified immunity analysis and determined that, with respect to the first prong, Plaintiff has not demonstrated that she was afforded constitutionally inadequate process, and, with respect to the second prong, Plaintiff's right to a hearing pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 523 (1985), before being terminated was not clearly established. [*Id.*] In her objections, Plaintiff contends the Magistrate Judge erred on both prongs of the analysis.[3] [Doc. 22 at 8–32.]

---

[3] To the extent Plaintiff argues the Magistrate Judge erred by "t[aking] up the cause of Defendants Clements and Noller . . . *sua sponte*" [Doc. 22 at 9], the Court disagrees. Plaintiff contends that Clements and Noller seek dismissal of this claim on qualified immunity grounds "only because they contend[] that clearly established law did not prohibit their misconduct in terminating [Plaintiff's] employment for 'medical' reasons without prior notice or a hearing." [*Id.* at 8.] However, the Moving Defendants argue in their motion that they are entitled to qualified immunity based on both prongs of the qualified immunity analysis—that Plaintiff has failed to establish any constitutional right was violated and that such right was not clearly established at the time of the alleged violation. [Doc. 6-1 at 7–9.] Accordingly, the Magistrate Judge did not err by addressing

As an initial matter, to the extent Plaintiff bases her objections on the assertion that Defendants violated the terms of the Teacher Act [Doc. 22 at 21–25], "[a] violation of a state statute does not . . . necessarily equate to a violation of a federal right," *Supinger v. Holcomb*, 717 F. App'x 194, 200 (4th Cir. 2017); *see also Loudermill*, 470 U.S. at 541 ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the [state] statute." (cleaned up)); *First Assembly of God of Naples, Fla., Inc. v. Collier Cnty.*, 20 F.3d 419, 422 (11th Cir. 1994) ("Significantly, the violation of a state statute mandating procedure is not the equivalent of a federal Constitutional violation."), *opinion modified on denial of reh'g*, 27 F.3d 526 (11th Cir. 1994). Accordingly, the Court considers the Moving Defendants' entitlement to qualified immunity only with respect to an alleged federal constitutional violation.

As the Magistrate Judge noted, "[q]ualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not 'violate clearly established rights of which a reasonable person would have known.'" [Doc. 21 at 10 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).] Courts must answer two questions to determine whether a defendant is entitled to qualified immunity: "(1) whether any right was violated, (2) whether that right was 'clearly established' at the time of the alleged violation." *Somers v. Devine*, 132 F.4th 689, 696 (4th Cir. 2025). Courts may answer the questions in any order, *id.*, and this Court begins

---

both whether a constitutional right was violated and whether that right was clearly established at the time of the alleged violation. *See Somers v. Devine*, 132 F.4th 689, 696 (4th Cir. 2025) (setting forth questions courts must answer to determine if state actors are entitled to qualified immunity).

with determining whether Plaintiff had a clearly established right to procedural due process.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). "[C]learly established law should not be defined at a high level of generality" and, instead, "must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks omitted). "[Qualified] immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

Here, Plaintiff argues that the Magistrate Judge improperly shifted the burden of proof on the qualified immunity defense to Plaintiff and defined the right at issue incorrectly. [Doc. 22 at 29–32.] Specifically, Plaintiff contends that it has been clearly established law for forty years that a public employee who has a property interest in her employment is entitled to some kind of hearing before she is discharged. [*Id.* at 30.] Moreover, Plaintiff asserts that even under the Magistrate Judge's incorrect definition of the right at issue,[4] the right was clearly established. [*Id.* at 31.]

---

[4] The Magistrate Judge defined the issue as follows:

> Was it clearly established on April 27, 2023, that a South Carolina school district must provide a hearing to a teacher who admits that she is medically unable to work and has already received more than six months of voluntary medical leave before declining to extend her medical leave for another five months and terminating her employment?

[Doc. 21 at 16.] Plaintiff challenges the Magistrate Judge's conclusion that she admitted she was medically unable to return to work and also argues that this definition insists on

The Court concludes that Plaintiff's definition of the right at issue—whether a public employee who has a property interest in her employment is entitled to some kind of hearing before she is discharged [Doc. 22 at 30]—is too general based on the facts alleged in the Complaint. Even if the Court defines the right with less particularity than the Magistrate Judge did by not focusing specifically on Plaintiff's medical leave or ability to work, the appropriate inquiry is not merely whether it was clearly established that a public employee who has a property interest in her employment is entitled to a hearing before she is discharged. Instead, based on the facts alleged in the Complaint, the inquiry is whether it was clearly established that a teacher maintains a property interest in continued employment when she chooses to retire after being told she would be terminated. [Doc. 1 ¶¶ 34–36, 48, 50, 55.] The Court concludes that the answer to this inquiry is no.

To state a claim for a procedural due process violation, a plaintiff must show that: (1) she had a protected life, liberty, or property interest; (2) the state or its agents deprived her of this interest; and (3) the process by which the deprivation occurred was constitutionally inadequate. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Here, Plaintiff alleges that she had a protected property interest in continued employment with the District and that "[t]he District, acting through Defendants Clements and Noller, deprived [Plaintiff] of her employment without first providing her due process as required by *Loudermill.*"[5] [Doc. 1 ¶¶ 58–59.] However, the Fourth Circuit has held

---

a level of exactitude that is not called for in a qualified immunity analysis. [Doc. 22 at 15–17, 31–32.]

[5] As Plaintiff alleges, *Loudermill* provides that "'[t]he tenured public employee is entitled to oral or written notice of the charges against him [or her], an explanation of the

that, if an employee "resigned of [her] own free will even though prompted to do so by events set in motion by [her] employer, [she] relinquished [her] property interest voluntarily and thus cannot establish that the state 'deprived' [her] of it within the meaning of the due process clause." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988). Nonetheless, "[a] public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing involuntary 'resignations.'" *Id.* Accordingly, where an employee's purported "'resignation' was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause." *Id.*

Resignations have been found involuntary, and thus deprivations of property, in two instances: "(1) where obtained by the employer's misrepresentation or deception, and (2) where forced by the employer's duress or coercion."[6] *Id.* at 174 (citations omitted). Under both circumstances, "the employer's conduct . . . prevented the employee from making a free and informed choice." *Id.*

---

employer's evidence, and an opportunity to present his [or her] side of the story.'" [Doc. 1 ¶ 16 (some alterations in original) (quoting *Loudermill*, 470 U.S. at 546).]

[6] In *Stone*, the employer met with the plaintiff to advise him of charges against him and "suggested that it would be best for both [the plaintiff] and the [employer] if he resigned immediately." 855 F.2d at 170. The court explained, "Under the 'duress/coercion' theory, a resignation may be found involuntary if on the totality of circumstances it appears that the employer's conduct in requesting resignation effectively deprived the employee of free choice in the matter. Factors to be considered are (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation." *Id.* at 174. The factor of whether the employee was offered real alternatives "must be gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may perceive his only option to be resignation—for example, because of concerns about his reputation—is irrelevant." *Id.*

Here, the Complaint alleges that Plaintiff was severely injured in a car wreck on October 22, 2022, and suffered a traumatic brain injury along with other injuries. [Doc. 1 ¶¶ 31–32.] She attempted to return to work in November 2022 but her symptoms persisted to such a degree that she requested a leave of absence. [*Id.* ¶¶ 34–35.] At the time, her physicians projected she may be able to return to work by April 1, 2023. [*Id.* ¶ 35.] The District approved her leave of absence and informed her of the requirements for an extended leave of absence beyond April 1, 2023. [*Id.* ¶ 36.]

In early 2023, based on her physicians' updated projections about Plaintiff's ability to return to work, Plaintiff "requested an extension of her medical leave until October 2023." [*Id.* ¶ 48.] On April 27, 2023, while the extension request was pending, Noller sent Plaintiff an email and "abruptly announced the termination of [Plaintiff's] employment, effective May 12, 2023." [*Id.* ¶ 50.] "To spare herself the humiliation of being illegally terminated, and to preserve her pension rights and access to health insurance so she could continue to receive medical treatment for various injuries, [Plaintiff] had no choice but to retire from teaching during the two-week window between the April 27 e-mail and her scheduled termination date." [*Id.* ¶ 55.]

Upon review of the allegations in the Complaint, the Court concludes that Plaintiff has failed to allege facts that show Clements and Noller violated a clearly established right. Given the *Stone* case in the Fourth Circuit, it was not clearly established between April 27, 2023, and May 12, 2023, the time period during which Plaintiff chose to retire, that her constitutional procedural due process rights would be violated by the District's failure to comply with the procedures outlined in *Loudermill*. *See Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002) ("If the right was not 'clearly established' in the 'specific

context of the case'—that is, if it was not 'clear to a reasonable [official]' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'—then the law affords immunity from suit."); *Stone*, 855 F.2d at 173 n.7 (4th Cir. 1988) (noting that "the public employee who resigns voluntarily . . . has suffered no deprivation at the hands of the state" and "procedural due process is not implicated[ because s]he has voluntarily surrendered the property interest upon whose existence the procedural rights depend"). Although the Complaint alleges that Plaintiff "had no choice but to retire from teaching" [Doc. 1 ¶ 55], potentially triggering *Stone*'s duress/coercion theory of an involuntary resignation,[7] the *Stone* court held that "the mere fact that [a] choice is between comparably unpleasant alternatives—e.g., resignation or facing disciplinary charges—does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary," *Stone*, 855 F.2d at 174. Notably, the plaintiff in *Stone* had a stronger due process claim than Plaintiff because, in *Stone*, the plaintiff's resignation was obtained by the employer after it gave the plaintiff a choice between resigning or facing termination proceedings and having his clinical privileges revoked. *Id.* at 170–71, 177. Thus, in *Stone*, the plaintiff chose resignation at the employer's request. *Id.* Nothing in the Complaint in this case suggests that Defendants requested that Plaintiff resign. [*See generally* Doc. 1]; *Gadsden v. Florence Cnty. Sch. Dist. Four*, No. 4:06-cv-3342-RBH, 2008 WL 320196, at *6 (D.S.C. Feb. 4, 2008) (concluding that the plaintiff could not establish that his resignation was obtained through duress or coercion and noting that his due process claim was weaker than the due process claim in *Stone* because no one

[7] Nothing in the Complaint alleges any misrepresentation on the part of Clements or Noller resulting in or concerning Plaintiff's resignation. [*See generally* Doc. 1.] Accordingly, the Court need not address the misrepresentation theory of an involuntary resignation.

requested the plaintiff in *Gadsden* to resign). Based on the allegations in the Complaint surrounding Plaintiff's resignation and the Fourth Circuit's decision in *Stone*, the Court concludes that it was not apparent that Clements's and Noller's conduct violated a clearly established federal right. Therefore, they are entitled to qualified immunity in their individual capacities regarding Plaintiff's § 1983 procedural due process claim for money damages. *See Zepp v. Rehrmann*, 79 F.3d 381, 387 (4th Cir. 1996) (concluding that qualified immunity shielded county executive and county attorney in their individual capacities from the plaintiff's § 1983 claim alleging that he was coerced into retiring).

Whether the § 1983 Due Process and Denial of Access to Courts Claims Against Clements and Noller are Duplicative of These Claims Against the District

As stated, the Magistrate Judge recommends that Plaintiff's § 1983 due process and denial of access to courts claims against Clements and Noller be dismissed as duplicative because they are asserted against Clements and Noller only in their official capacities. [Doc. 21 at 8–9.] Plaintiff objects to this recommendation, asserting that the Magistrate Judge "was led astray and recommended that the individual-capacity claims against Defendants Clements and Noller should be dismissed as duplicative." [Doc. 22 at 3 (cleaned up); *see id.* at 2–8.] However, the Court does not read this portion of the Report to recommend that the individual-capacity § 1983 due process and denial of access to courts claims against Clements and Noller be dismissed. Instead, the Court reads the Report as concluding that the Complaint alleges these claims against Clements

and Noller only in their official capacities and, therefore, the claims duplicate the claims against the District.[8] [*See* Doc. 21 at 8–9.] Accordingly, this objection is overruled.

**Plaintiff's Motion to Amend the Complaint**

A party may amend its pleading once before trial as a matter of course under circumstances not applicable here, Fed. R. Civ. P. 15(a)(1), and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

[8] Although Plaintiff has not specifically objected to the Report's construal of the § 1983 due process and denial of access to courts claims against Clements and Noller as only official capacity claims, the Court rejects that portion of the Report upon a clear error review. The Supreme Court has recognized that state officers may be sued in their individual capacities for actions taken while engaged in their official duties. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Thus, the distinction between individual capacity and official capacity suits "is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* at 26. Accordingly, the Court construes Plaintiff's § 1983 claim against Clements and Norell to have been brought against them in both their individual and official capacities. [*See* Doc. 1 ¶ 3 ("Ms. Clements is being sued in both her official and individual capacities."), ¶ 5 ("Ms. Noller is being sued in both her official and individual capacities.").]

Here, Plaintiff seeks to amend her Complaint to "(1) withdraw and/or modify some of her claims; (2) cure any perceived pleading deficiencies; (3) add additional factual allegations discovered after the filing of her Complaint that could not have then been stated therein; and (4) add Stancorp Financial Group, Inc. d/b/a The Standard Insurance Company ("The Standard"), and/or The Standard Life Insurance Company of New York d/b/a The Standard Benefit Administrators ("SBA"), as parties to this litigation so as to assert insurance-based and other claims against them." [Doc. 23 at 1; *see also id.* at 34–35.] In response, Defendants argue Plaintiff's motion should be denied because Plaintiff's counsel failed to consult with Defendants' counsel as required by Local Civil Rule 7.02, D.S.C., and because the motion is vague regarding the specific amendments Plaintiff seeks, making it impossible for Defendants to adequately respond to the motion. [Doc. 25 at 3–5.] And in reply, Plaintiff indicates she is amenable to the Court's denying leave to amend without prejudice so that Plaintiff may renew her motion, comply with Local Civil Rule 7.02, and submit a proposed amended complaint. [Doc. 28 at 13–14.]

Without a proposed amended complaint to review, the Court is unable to determine whether amendment would be futile. Accordingly, the Court denies Plaintiff's motion for leave to amend the Complaint with leave to refile. Plaintiff shall file a renewed motion to amend the Complaint by October 14, 2026, and shall submit a proposed amended complaint along with the motion so that Defendants may adequately respond to the motion and the Court may review the proposed amendments. In the renewed motion to amend the Complaint, Plaintiff should seek only amendments that are consistent with this Opinion and Order, paying particular attention not to reallege claims that have been dismissed because they cannot be brought as a matter of law.

## CONCLUSION

Based upon the foregoing, the Court accepts in part, rejects in part, and modifies in part the Report and Recommendation of the Magistrate Judge, which is incorporated by reference to the extent consistent with this Opinion and Order. Accordingly, the Moving Defendants' partial motion to dismiss [Doc. 6] is GRANTED IN PART and DENIED IN PART. The motion is (a) granted as to Plaintiff's state equal protection, state denial of access to courts, SCPWA, interference with contractual relationship, breach of fiduciary duty, SCUTPA, § 1983 denial of access to courts, first-party intentional spoliation, third-party intentional spoliation, § 1985 civil conspiracy, and state civil conspiracy claims; (b) granted as to Plaintiff's wrongful termination and promissory estoppel claims against Clements and Noller; (c) granted as to Plaintiff's § 1983 due process claim against Clements and Noller in their official capacities; (d) granted as to Plaintiff's § 1983 due process claim against Clements and Noller for money damages; and (e) otherwise denied. Additionally, Plaintiff's motion for leave to amend the Complaint [Doc. 23] is DENIED with leave to refile by October 14, 2026.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

September 30, 2026
Greenville, South Carolina